Commission, and Mr. Calauro is here for the petitioner. Mr. Martin and Mr. Gibbs are here for the commission, and Mr. Calauro, you may begin when you're ready. Thank you, Your Honor, and may it please the Court. The question in this case is whether the CFTC had the authority to interpret Section 18A of 7 U.S.C. 18A to allow claims against Mr. Word to go forward while dismissing claims against the identically-situated codefendant or correspondent, I should say, simply because Mr. Word defaulted in front of the agency. I think the agency lacked the jurisdiction to take that approach for several reasons. First, the agency lacks the authority to treat identically-situated respondents differently simply because one defaulted. That principle has been long established. It was recognized by the Supreme Court in the Frow decision. The 11th Circuit has recognized it as valid and endorsed it in the Gulf Coast decision. And while final orders of the agency haven't done this in its own internal proceedings, administrative law judges at the commission have applied the Frow principle as well. So that is one basis on which we think the agency lacked jurisdiction and the authority to take the action it did. We need to first decide whether or not we have appellate jurisdiction to hear this case. There was no appeal bond filed, right? That's correct, Your Honor. And we don't believe that an appeal bond was required under the text of the relevant statute. The statute says a petition for review in the Court of Appeals shall not be effective unless the petitioner files an appeal bond. That language is pretty clear. That's how it begins, Your Honor. But I think it then continues that the bond must be filed within 30 days after the reparation order. So the phrase, the reparation, is used there. And then in the next sentence, it talks about the bond having to be double the amount of the reparation awarded against the appellant. And I think if the agency's view is right and if the appeal bond were to require requirement were to be understood to apply here, the word the reparation would occupy two different time periods in the same statutory phrase. So your argument is that a default judgment is not any order? Any order? The order dismissing the default judgment is a reparation order. I think everyone agrees on that, Your Honor. So the 2016 order denying Mr. Ward's motion to set aside the default against him, that is a reparation order. But the question is, does that reparation order award any damages, any reparations that need to be posted in the form of a bond? And as to that, the answer is no, because the 2016 order did not award any reparations. It simply denied a motion to set aside an earlier award that collection proceedings were already underway and had long been underway and in which assets had already been recovered. If you're right, then all a defaulting defendant has to do is to wait for the default to be entered, and in this case, wait several years, and then come back and move to reopen. And whatever judgment the commission enters at that point does not involve the reparation order. Isn't that right? And wouldn't that defeat the whole purpose of requiring the posting of a bond? No, Your Honor. So I think it is true. I think there were two questions there. So first, I would say the answer is yes, a bond does not need to be posted in the case of an order of motion to set aside a reparation order. That's point number one. But the reason that that shouldn't have the practical consequences you're concerned about is that as a general matter, defendants or respondents are not going to use that process to enhance their rights to appeal. If the defendant, if the respondent gets notice of the charges against them and actually appears in front of the CFTC, they certainly get the benefit of being able to present their arguments to the agency. And then if they announce that they are going to directly appeal the agency's order, the CFTC's own regulations provide that the judgment actually can't be collected. There's a regulatory provision that says, and that provision is 17 CFR 12.407, that if you timely file an appeal from an order of the commission with this court, payment of the bond, excuse me, payment of the actual award is not required. And so that's why in those circumstances you post a bond to secure what's going on. It's essentially a supersedious bond, is it not? It suspends the execution on the judgment, protects the party in whose favor the judgment runs, and provides in essence for insurance money that if the party prevails on appeal, it still will be able to collect on the judgment. If the party proceeds with an appeal, but in the case of a default, there is no stay of enforcement. In the case of a default, as soon as the commission's order becomes final, the party for whom reparations were awarded can immediately go to district court and begin collection. And that's what happened here. But we're back to Judge Wilson's question. Looking at the language of Section 18e, how do we get around the fact that Congress says this is mandatory in order to perfect an appeal from whatever the district court decides to do? It's mandatory when you're, I think the answer to that is that it's mandatory when you were appealing a reparation order that awards reparations. But he's still challenging the reparation order. He's just doing it, I guess if you want to use the phrase, through a collateral attack on the entry of the default judgment against him 15 years early. That's correct, Your Honor. But I think just going back to your earlier point, the purpose of a bond is to secure assets in the event that an appeal is unsuccessful. And in this case, collection has already happened. Over $100,000 has been collected for Mr. Ward already. But the amount that he owes, there's still a balance due and owing, is there not? Well, I believe that that's the case, though the exact calculations, I think, are not contained in the record from either side. But he certainly paid well more than two times the amount of the reparation award against him. And so at minimum, we would think that under the Saharoff case that the agency has cited, there's no need for a bond to be posted. But the reparation award was for $17,000 plus reasonable attorney's fees and costs, correct? Right. But I believe that the attorney's fees and costs and the reparation award, whatever that amount was, is less than the hundred, it's less than, even doubled, is less than the $100,000 that's already been paid. But I think the most important point on this question is what the text of the statute says. And it talks about the reparation order and the is the 2016 order. That order does not award any reparations. And I don't think this court should be concerned about the possibility that parties in the CFTC will effectively sleep on their rights to get an advantage on appeal because there's, one, that's not what the text, one, that's, I think, what the text of the statute says. But two, there are many practical reasons why you wouldn't do that if you actually knew about the claims against you. Principally, you would be in a situation where the other party basically has the right to go to district court and begin collecting assets from you immediately well in advance of your taking any claims at the commission to try to set aside the default judgment that was entered a long time ago. I'm still not convinced it isn't an end run around the bond. I just don't see how the if we don't say you've got to post a bond in the full amount that's due and owing at the time you wish to pursue appellate remedies. Well, I think it would not be in any event the amount that's due and owing at the time you wish to pursue the remedy. The amount that you would have to post, I think, in all circumstances, and I think even the commission would agree to this, is whatever the reparation award was plus attorney's fees doubled. You wouldn't take whatever the amount is later after interest is compounded at some later point in time. Well, you would concede that had he timely appeared and had the reparation order been entered and had he filed an appeal and posted a bond, it would have been in whatever the amount was of the reparation award plus reasonable fees and costs at that time, correct? Double that amount. It would have been twice whatever the amount was in the order plus the fees and costs, yes. I don't think you would add interest to that amount. It would be what was in the attorney's fees and costs. But in that circumstance, and this is why it's not an end run, I mean, first of all, we think that the text says what it says. But even separate from that, it's not an end run because in that circumstance, the complainants in this case, the Stiddhams, would not have been able to go to the district court and the state court and take in a default judgment and immediately collect the assets of Mr. Ward. He would have had the right because he posted that bond to forestall collection of the judgment against him. So it's not an when respondents have notice of the claims against them, what they will do in the ordinary case is just appeal in the ordinary course by posting a bond. But he's never posted a bond at any time. And yet now you're insisting that we have jurisdiction to hear this appeal in the face of what looks to me to be pretty clear congressional statutory language that says without the bond, you can't appeal. Your Honor, he has never posted a bond because he's never appealed a reparation order in which there was a reparation awarded. I think even the commission itself in their decision in this case, in footnote 41 of the decision, seems to envision that you can have a reparation order that is appealable that does not award any reparation. But isn't he seeking to set aside that default judgment and the order that arose from it? He's seeking to set aside the default judgment, yes, but the order that he is appealing is a 2016 order that does not award any reparations. And in that order, in footnote 41, the commission said that he would have to post double the amount of any reparation awarded, which we think most naturally reflects the commission's own understanding that you can have a reparation order that itself does not award any reparations, which is the situation you have here. I guess I'd have more sympathy for your argument if I saw some money in the form of a bond. But since he hasn't posted anything, I'm really having trouble following your argument to his logical conclusion, given the language of the statute. First of all, Your Honor, I think while money hasn't been posted in the form of a bond, a substantial amount of money has been paid to the other side in the form of the collection of Mr. Ward's house and of his assets that have been attached in several proceedings as a result of the default judgment against him that he is seeking to set aside. So a substantial amount of money has already been paid, and I think in any circumstance that satisfaction of the actual judgment is usually understood to obviate the need to post a bond on top of that. The practical concerns with the reading that I think Your Honor is suggesting may be the better reading of the statute are that an individual could completely pay the judgment against them, the underlying judgment against them, and then still have to post a bond of double that amount in order to obtain access to the courts. And we think that that's not what the statute envisions and not what its text actually says. I think what the text most naturally says is that if you look at what the reparation order that's being appealed does, and if that reparation order does not contain an award of reparations, then there's no bond that's required. You concede that if the default judgment doesn't fall within the term any order in the statute, then you do have to post a bond, right? I'm not sure I would, I'm not sure of the answer to that question, Your Honor. I think what you need to look at is what the reparation order is that's being appealed. If the court thinks that the reparation order being appealed is the default judgment from the 90s, then I suppose that's right. But I think everyone acknowledges in this case, even the agencies acknowledged in their brief that the reparation order being appealed is the 26 order denying the set-aside. I see my time is running a little bit short. If I could briefly address the merits, Your Honors, I'd be happy to do that. We haven't addressed the merits, which I'll give you two additional minutes. Thank you, Your Honor. I think there's two reasons why, if you agree with us that following the text of the statute and are not troubled by the practical considerations for the reasons I've mentioned, on the merits, the agency's decision can't withstand scrutiny. The question of whether the agency had jurisdiction is, post-Arlington, a question about whether the agency has properly exercised its statutory authority. And we think they haven't for two reasons. The first is that the agency interpreted 18A in a way that did not treat identically situated defendants or respondents, I should say, alike. One respondent appeared in front of the commission and asserted that the claims were time barred. In every respect, that respondent was identically situated to Mr. Ward, which is a point that the ALJ effectively all but conceded. And yet, the commission said that those similarly situated, identically situated individuals shouldn't be treated alike because one had defaulted. And the Frow decision, as well as this Court's decision in Gulf Coast, and the agency's own ALJ decisions, all confirm that that approach is not a valid approach to take. You can't treat identically situated individuals differently, and if you do, that's arbitrary and capricious and thus outside the agency's jurisdiction. We also think that the agency's interpretation of the statute itself, the way that they looked at 18A, was wrong and right of Arlington. Because what the agency did, and I think it's hard to dispute if you look at the order that the agency issued, that what they were doing was interpreting the statute as opposed to the regulation. The way they interpreted that statute was by saying, looking at this sort of question from Article III context of whether a statute is jurisdictional or non-jurisdictional. And that is not the right lens to take in the context of an agency adjudication where the question is ultimately what the best reading of the statute is. We don't think the statute can be construed to permit claims to be filed after two years, but even if your honors disagree and believe that the statute is ambiguous, the agency has to provide a reasoned basis for interpreting the statute as they've interpreted it. And we think they haven't given good reasons here. All right. We have your argument. Thank you, Your Honor. Mr. Kolari, we'll hear from Mr. White. May it please the Court, I think I will start with the bond issue. And I think the best way to approach the bond issue is to simply walk through the statutory language turning to Section 18E about judicial review. It starts out by saying, pardon me, I need to turn the page, any order of the commission here under, meaning, you know, under the reparations provision is subject to appeal. So, sentence one talks about any order, including the 2016 order in this case. You can appeal it to this Court. The second sentence deals with the bond, and the first words of the sentence, grammatically, the subject of the sentence is such appeal. So that's a reference back to any order. So, starting at the beginning of the second sentence, Congress instructs that any order subject to appeal shall not be effective unless there's a bond posted. Mr. Ward's counsel emphasizes the language at the end of the second sentence. That language already presumes there's a bond requirement, says, you know, the sentence has already said it has to be posted within 30 days, and simply tells you how to calculate the amount of the bond requirement. And it says, double the amount of the reparation awarded against the appellant. Now, Mr. Ward's counsel would have you read that as double the amount of the reparation awarded against the appellant in the particular order that happens to now be in front of the Court. However, that's not what the language says.  So, reparation order, the first usage of the word reparation, does that refer to the order being appealed? In other words, the any order at the beginning of the first sentence? Yes. Because otherwise, the within 30 days requirement would not make any sense. Otherwise, he would have had to post the bond for this appeal 25 years ago. Correct. So, but then, aren't you necessarily saying that the second usage of the word reparation means something different? Correct. Because the second, well, actually, I think there are two ways of getting at this. I think the most straightforward way of reading the language is to answer your question, yes, that that language about how you calculate the amount refers to a different order. And the reason that's the best reading of the statute is it does not say double the amount of the reparation awarded in some particular order. It just says double the amount of the reparation awarded against the appellant whenever. And I think a second way to get at the same point is, I think the point made at least implicitly by Judge Tallman, which even, which is that even the current 2016 order, it's not the first order awarding reparations, but it is an order whose practical effect is to ensure that Mr. Word is required to pay reparations. So I don't know that there's any fundamental difference between the 2016 order and the original order. So that's another way of getting at the same point. Let me ask you a slightly different question. Would the reparation awarded be the entire reparation award or would it be what is remaining uncollected of the original award? Okay, I think the best way to approach this is a two-step process. I would, I think the best thing to do is simply start with the literal language of the statute, which would tell you to go back to the 1992 award, including interest, cost, whatever, calculate double that amount. So let's say it's $50,000 or whatever. You calculate that amount and just the literal language of the statute says you've got to pay that bond into the court. If there had been no collection, say, which was true in this case until quite recently, then that's the end of the story. If some money has been paid, then the Saharoff case says the respondent potentially can make a constitutional attack on the bond requirement. At that point, it would be open to Mr. Word to come into the court and say this violates my equal protection rights and there's no rational basis for the award. If, hypothetically, Mr. Word had paid everything he owed, 100%, that might be a good argument. However, in this case, there is still an amount owing and therefore there is still a rational basis for a bond requirement, so a Saharoff challenge fails. So the amount that was paid altogether was $75,000? In that ballpark, yes. Which is more than double the amount of the reparations award. Correct. However, the statute, first just applying the statute literally, it requires a bond payable to the court, number one, so that's literal language. And the policy reason for a bond remains in effect because the policy reason for the bond is to ensure that the claimant is made whole, assuming the claimant wins the appeal. And that policy reason is still in effect. And it is true that there has been a substantial payment, but there is still a large amount owing is due to Mr. Word's conduct in failing to pay what he owed, including interest, at an earlier date. I'm just curious, how much is a $75,000 appeal bond cost? I don't know. Okay. I'd now like to address the merits, at least briefly. Mr. Word's counsel says that the issue in this case, in essence, is did the administrative law judge, you know, back in 1992, properly allow the Stidham's claim against Mr. Word to go forward, even though it is possible that they violated the two-year requirement? And I say possible because with discovery rules or possible tolling, those issues were never litigated as to Mr. Word, so we don't know for a fact that Mr. Word would have been in the same situation as Ms. Farrow, against whom the claim was dismissed. However, more fundamentally, that is not the issue before this Court. The issue before this Court is not whether the Stidham's complied with the two-year requirement. The issue before this Court is whether, having defaulted in 1992 and learned about the default by 1995 at the latest, procedurally, can Mr. Word walk into the CFTC, you know, 20 years later and make the argument that his counsel wants to make now? And that is a question that is not answered by the plain language of Section 18A, which merely states the two-year requirement. That is a question that is answered by the CFTC's procedural rules, which say to get in the door at this point, Mr. Word had to demonstrate that that old order was void for lack of jurisdiction. And so that's the question before the Court, and that question is answered by Sebelius, in which the Supreme Court said that when you have time limits for action by an administrative agency, in that case a review board within the Department of Health and Human Services, those time limits are presumed not to be jurisdictional unless Congress clearly states that they are. And if you read the language of Section 18A, it says there's no jurisdictional type language. It's just written like a normal statute of limitations. The claimant is supposed to come in within two years. Now, I guess Mr. Word's counsel raises the question, how do you square that with the no difference between jurisdictional statutes and non-jurisdictional statutes involving administrative agencies? And the way you square those two cases is to recognize that they deal with different issues. Arlington is about the process of interpreting a statute, and Arlington says for purposes of a court interpreting a statute involving an agency, all statutes are equal. They all go to the authority of the agency. You use the same interpretive method, Chevron. Sebelius, in this case, deal with a different issue. Assuming for the sake of argument that you've figured out what the statute means, two years, whatever, and that there has maybe been a violation of it, maybe the stigmas were late, maybe not, what are the consequences? And Sebelius says, for that purpose, all statutes are not equal. Some statutes, if you violate them, totally deprive the court of the power to act, and we call those jurisdictional, others do not. And that's precisely the situation in this case. The issue is, even if we assume for the purposes of argument that the stigmas were late, which of course we don't know, what are the consequences? Not jurisdictional, and the procedural consequence is that Mr. Word is not entitled to make the argument at this point. All right. Thank you. Thank you, Mr. White. We'll hear from Mr. Gibbs. May it please the Court, I'm only going to address the race judicata issue. I will touch upon some of the facts that pertain to the appeal bond issue that we've been discussing. To do so, I'll go through some history. The citizens have been involved in extensive litigation in the Georgia courts to award the 1992, enforce the 1992 operations award. In 1993, they sued in the U.S. District Court to enforce the award. That suit was delayed because there was a Chapter 7 bankruptcy filed by Mr. Word, and that award, the award was declared non-dischargeable. So we were back in the District Court, a judgment was entered for $37,000 in 1996. Beginning in 2003, we were litigating in the Georgia courts, and eventually, we had a claim to enforce the judgment against real property that Mr. Word had interest in. There was a receivership appointed for the LLC that had the end result was $70,000 distributed to the Stidhams in 2016. The payment left Word owing the Stidhams over $50,000 as of September 2016. That interest figure is, the interest is running at 12% per annum pursuant to the pre-2003 Georgia statute on judgment interest. Word's argument that the jurisdictional attack on the 1992 CFTC reparations order can be based on two reasons. One is that Bush v. Balfour, Beatty, Bahamas, cited in our brief, holds that the issue preclusion can apply when a default judgment has been entered on as a discovery sanction. The facts in that case are very parallel to the case we have before us. It's just that the bankruptcy case and the District Court case are in reverse order in the Balfour case. Bush v. Balfour, Beatty is almost a parallel to ours just with chronology reversed. Second, Word waited from 1994 to 2011 to file in the CFTC an attack on the 1992 reparations award with a motion to vacate. The jurisdictional, he argued the same jurisdictional argument that he argues today. The CFTC order in 2012 was appealable to this court. They didn't do so. So if the court were to allow Mr. Word a third bite at the apple, then the court will be rewarding him for his failure to comply with discovery in 1992, excuse me, in 1996. Word's approach to adverse judgments resembles that of guerrilla warfare. When you lose, don't concede defeat, just run away to fight on another day. The appeal bond would have been $35,000, twice the original reparations award. Mr. and Mrs. Sidham would love to have that today. Thank you, Mr. Gibbs. We'll hear again from Mr. Calaro. Thank you, Your Honor. First, it seems like Word could have posted some appeal bond. He hadn't posted any appeal bond at all. I think the reason... If you take into consideration the accumulated interest, he would still owe approximately $50,000, you know, assuming that the statute of limitations is non-jurisdictional and he was required to post an appeal bond. It seems like he could have posted some appeal bond and then come into court and say the appeal bond requested by the Commodities Future Trading Commission was excessive or whatever. And so, I mean, we granted him form of proper status in this case. We might have taken into consideration, you know, the fact that the appeal bond was not in the amount that it was intended to be, but, you know, there was an appeal bond that was posted in compliance with the statute. There's no appeal bond at all. That's correct, Your Honor. But first, just as a factual point, the amount that's been paid is actually $75,000, give or take, plus $35,000 in attorney's fees. But the question Your Honor asked, I think, assumes that an appeal bond is required. And I think what the CFTC effectively conceded, based on their statutory interpretation, is that an appeal bond is not required. They agree that the reparation order we are talking about is the 2016 order. They agree that if their position is correct, the word, the reparation, in the statute occupies two different time periods in following sentences. The first sentence says, the reparation order, where here the reparation order is, when we talk about the reparation here, we mean 2016, that's one time period. And then in the next sentence, they say, or in the same sentence, I should say, the appellant also files with the clerk of the court a bond in double the amount of the reparation awarded. And now we're going all the way back to the 1980s when the first reparation was awarded. That is not the right way to interpret the statute. So you can't have- If we have jurisdiction, what's your argument to the res judicata argument? A couple of things, Your Honor. First, the agency itself disavowed a passing on the res judicata argument, so they have not exercised their discretion on that issue in any way. In their order, I believe in the same footnote, footnote 40, they do not address res judicata. But I think more importantly- But the district court dismissed the case with prejudice as a sanction because of Mr. Word's recalcitrance in responding to discovery. So if that, if we decide that a district court has the authority to do that in an appropriate case, why would we not apply res judicata to deny the appeal on that ground if we reach the merit? Your Honor, I see my time is a little short. May I respond to the question? First, the district court cannot revisit the underlying merits of the order. The statute at issue here, 18E, actually vests the exclusive authority to look at agency decisions in the agency itself. So the district court could not address any of the merits of the underlying reparation order. All it had the authority to do was basically say whether it was collectible or not. And I believe most of the- But doesn't the case law say that a merits or a dismissal as a sanction in an appropriate case can be deemed to be res judicata as to a defense that could otherwise have been raised had the defendant not been so difficult in responding to the litigation? I think the first response to that is that the defense could not have been raised to the district court because only the CFTC had the authority under 18E to hear the arguments about the jurisdiction, whether it had jurisdiction, and whether it acted reasonably. If that award was converted to a judgment in a United States district court, why would that deprive the district court of the authority to determine whether the original reparation order was entered by an agency without jurisdiction? Because the conversion is effectively automatic. I think the statute, Section 18D2, the CFTC statute, says that a reparation order shall- shall be directly enforceable in district court as if it were a judgment. And the district court- Which is no different from NLRB orders or SEC orders or Consumer Trade Commission orders? But ultimately, I think it comes back to the point that the district court did not have the ability to revisit any of the agency's determinations. And therefore, Mr. Ward's challenges to the agency's determinations were not actually litigated or a necessary part of the judgment in the district court. Okay. Thank you, Your Honor. Thank you, Mr. Kallara. And I see you were appointed by the court to represent Mr. Ward in this case, and the court thanks you for your service. Thank you, Your Honor.